UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORDAN WHITE,<br><br>Plaintiff,<br><br>v.<br><br>UMG RECORDINGS, INC. (d/b/a INTERSCOPE RECORDS); JORDAN CARTER, (p/k/a PLAYBOI CARTI) *et al.*,<br><br>Defendants. | Case No. 1:20-cv-09971 (AT) (OTW) |

# PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff, Jordan White, submits this response to the Statement of Undisputed Facts provided by UMG Recordings, Inc. ("UMG") and Jordan Carter p/k/a Playboi Carti ("Carter," collectively "Defendants"), as required by the Court's Individual Rules, at Section III(C). Plaintiff's responses are as follows:

**I.    Undisputed Facts Which Defeat Plaintiff's Claim for Allegedly Improper Takedown Notice of His Sound Recording "Oi!" under 17 U.S.C. § 512(f)**

**A.    The Beat**

1.    Plaintiff Jordan White p/k/a Gvvaan ("Plaintiff" or "White") entered into a non-written agreement with a third party, Jordan Jenks p/k/a Pi'erre Bourne ("Jenks"), to use an instrumental music track (the "Beat"), in exchange for payment of $250. White Tr., at 73:21-24, 76:14-77:6; ECF Doc. No. 123, at ¶ 21.[1]

---

[1] The statements set forth in Paragraphs 1, 2, 3 and 7 herein are undisputed solely for purposes of this summary judgment motion.

Disputed. The agreement was confirmed in writing through a series of text messages. See EL1-9 (text messages).

2. Plaintiff created a sound recording entitled "Oi!" ECF Doc. No. 123, at ¶ 22; White Tr., at 72:17-25.

Undisputed.

3. The vocals on "Oi!" were performed by Plaintiff. ECF Doc. No. 123, at ¶ 22; White Tr., at 72:17-25.

Undisputed.

4. The instrumental musical track of "Oi!" incorporates the Beat. ECF Doc. No. 123, at ¶ 22; White Tr., at 72:17-25.

Undisputed.

5. A sound recording entitled "Right Now" was released by UMG. [Screenshot of UMG0000189, YouTube Video of Song].

Undisputed.

6. The vocals on "Right Now" were performed by Carter. [Screenshot of UMG0000189, YouTube Video of Song].

Undisputed.

7. The instrumental musical track of "Right Now" incorporates the Beat. [UMG0000189, YouTube Video of Song].

Undisputed.

8. UMG is the sole copyright owner of the "Right Now" sound recording. [Carter Recording Agreement; Jenks Producer Agreement].

Disputed. UMG's sole copyright in "Right Now" is limited by Plaintiff's rights to the Beat. UMG's rights in the Beat is at most a license which coexists with Plaintiff's rights in the Beat. See Carter Recording Agreement ¶ 8.01(a) ; ECF Doc. No. 76, at ¶ 11 (Jenks Answer); Jenks - Carter Recording Agreement, ¶ 7.

### B. The Takedown Notice

9. Plaintiff posted his song "Oi!" on online platforms, including Twitter.

Disputed. To the extent that the song "Oi!" was a link to a music video with moving picture with the sound recording of "Oi!" being performed by White. See "Oi!" YouTube Video.

10. A content protection specialist at UMG, Osaze Olumhense ("Olumhense"), encountered on Twitter two posts of "Oi!" when he was conducting manual searches on Twitter to look for posts that infringed UMG's copyrights. Olumhense Tr., at 160:10-24; 165:22-168:17; 171:16-172:7.

Disputed. Olumhense testified that he did not recall these searches and that they did not fit within his standard practice of using keyword to locate the artist and song names as used on the platform. Olumhense Tr., 53:25-54:15 (he would search by "artist name" and "song title," neither of which would have led to the discovery of Plaintiff's song, which included neither the name "Playboi Carti" or the title of any Playboi Carti songs.)

Olumhense testified that UMG directed him to remove *only* actual copies of Playboi Carti songs and not remixes or similar beats. Olumhense Tr. 92:6-24, Ex. 1.

Olumhense denied ever hearing Plaintiff's song "Oi!" or any of Plaintiff's songs and thus could not have heard Oi! and included it in the spreadsheet for the takedown notices. Olumhense Tr., 96:10-17. And he denied ever sending a takedown notice for the song "Oi!" or any of Plaintiff's songs. Id., 99:9-18.

3

Olumhense testified that UMG had no "formal policy or formal procedure" for sending takedown notices and that "40 plus people" and "everybody" at UMG "would have access" to the editable spreadsheet of takedown notices that eventually came to include relevant Twitter posts for Plaintiff's song, and all of those people were able to add and remove Twitter posts and songs and those edits would not be visible to Olumhense. Olumhense Tr., 53:7017; 60:10-61:6; 67:17-21.

Olumhense testified that the spreadsheet with the takedown notices did not appear as he remembered it and that it "look[ed] like something that could have been altered, to be honest." Olumhense Tr. 109:7-21. He testified that it "look[ed] different than the way [he] remember[ed] sending it." Olumhense Tr. 110:4-9.

Finally, the takedown notice states that Plaintiff's song on Twitter was a "ripped track" which means an exact copy of a UMG track but it is undisputed that Plaintiff's song Oi! is a different song with different lyrics. See RIAA 2.

11.     Based on a listening comparison of "Right Now" and "Oi!", which he described as an "A/B comparison," Olumhense concluded that the two recordings contained the same instrumental musical track. Olumhense Tr., 156:2-6.

Disputed. Olumhense testified that UMG directed him to remove *only* copies of Playboi Carti songs and not remixes or similar beats. Olumhense Tr. 92:6-24, Ex. 1.

Olumhense denied ever hearing Plaintiff's song "Oi!" or any of Plaintiff's songs and thus could not have heard Oi! and included it in the spreadsheet for the takedown notices. Olumhense Tr., 96:10-17. And he denied very sending a takedown notice for the song "Oi!" or any of Plaintiff's songs. Id., 99:9-18.

4

Finally, the takedown notice states that Plaintiff's song on Twitter was a "ripped track" which means an exact copy of a UMG track but it is undisputed that Plaintiff's song Oi! is a music video and a different song with different lyrics. See RIAA 2. The spreadsheet does **not** say that the works include the same musical track. Id.

12. Based upon his conclusion that "Right Now" and "Oi!" contained the same instrumental musical track, Olumhense concluded that the two Twitter posts of "Oi!" infringed UMG's copyright in the sound recording "Right Now."  Olumhense Tr., 154:9-155:25.

Disputed. Olumhense testified that he did not recall these searches and that they did not fit within his standard practice of using keyword to locate the artist and song names as used on the platform.  Olumhense Tr., 53:25-54:15 (he would search by "artist name" and "song title," neither of which would have led to the discovery of Plaintiff's song, which included neither the name Playboi Carti or the title of any Playboi Carti songs.)

Olumhense testified that UMG directed him to remove *only* copies of Playboi Carti songs and not remixes or similar beats. Olumhense Tr. 92:6-24, Ex. 1.

Olumhense denied ever hearing Plaintiff's song "Oi!" or any of Plaintiff's songs and thus could not have heard Oi! and included it in the spreadsheet for the takedown notices. Olumhense Tr., 96:10-17. And he denied very sending a takedown notice for the song "Oi!" or any of Plaintiff's songs.  Id., 99:9-18.

Olumhense testified that UMG had no "formal policy or formal procedure" for sending takedown notices and that "40 plus people" and "everybody" at UMG "would have access" to the editable spreadsheet of takedown notices that eventually came to include relevant Twitter posts for Plaintiff's song, and all of those people were able to add and remove Twitter posts and songs

and those edits would not be visible to Olumhense. Olumhense Tr., 53:7017; 60:10-61:6; 67:17-21.

Olumhense testified that the spreadsheet with the takedown notices did not appear as he remembered it and that it "look[ed] like something that could have been altered, to be honest." Olumhense Tr. 109:7-21. He testified that it "look[ed] different than the way [he] remember[ed] sending it." Olumhense Tr. 110:4-9.

Finally, the takedown notice states that Plaintiff's song on Twitter was a "ripped track" which means an exact copy of a UMG track but it is undisputed that Plaintiff's song Oi! is a different song with different lyrics. See RIAA 2; "Oi!" YouTube Video.

13.     Olumhense then decided to include these two Twitter posts of "Oi!" (the "Twitter Posts") on a spreadsheet to be sent to the Recording Industry Association of America ("RIAA"). Olumhense Tr., 154:2-11, 156:7-17; Chart to RIAA (Exhibit 3 at Olumhense Dep.).

Disputed. Olumhense testified that he did not recall these searches and that they did not fit within his standard practice of using keyword to locate the artist and song names as used on the platform. Olumhense Tr., 53:25-54:15 (he would search by "artist name" and "song title," neither of which would have led to the discovery of Plaintiff's song, which included neither the name Playboi Carti or the title of any Playboi Carti songs.)

Olumhense testified that UMG directed him to remove *only* copies of Playboi Carti songs and not remixes or similar beats. Olumhense Tr. 92:6-24, Ex. 1.

Plaintiff's Twitter post which was taken down by Defendants was a link to Plaintiff's music video of his song "Oi!" which contained no reference to Carter as an artist, the song "Right Now," and bore no image of Carter, or Carter's album art "Die Lit." See "Oi!" YouTube Video. Furthermore, Olumhense was directed to only flag videos for takedown where at least 60 seconds

6

of Carter's song recording is posted in the video, and only where the video displayed Carter's album art in the post. See UMG0000061-63.

Olumhense denied ever hearing Plaintiff's song "Oi!" or any of Plaintiff's songs and thus could not have heard Oi! and included it in the spreadsheet for the takedown notices. Olumhense Tr., 96:10-17. And he denied very sending a takedown notice for the song "Oi!" or any of Plaintiff's songs. Id., 99:9-18.

Olumhense testified that UMG had no "formal policy or formal procedure" for sending takedown notices and that "40 plus people" and "everybody" at UMG "would have access" to the editable spreadsheet of takedown notices that eventually came to include relevant Twitter posts for Plaintiff's song, and all of those people were able to add and remove Twitter posts and songs and those edits would not be visible to Olumhense. Olumhense Tr., 53:7017; 60:10-61:6; 67:17-21.

Olumhense testified that the spreadsheet with the takedown notices did not appear as he remembered it and that it "look[ed] like something that could have been altered, to be honest." Olumhense Tr. 109:7-21. He testified that it "look[ed] different than the way [he] remember[ed] sending it." Olumhense Tr. 110:4-9.

Finally, the takedown notice states that Plaintiff's song on Twitter was a "ripped track" which means an exact copy of a UMG track but it is undisputed that Plaintiff's song Oi! is a different song with different lyrics. See RIAA 2.

14. The RIAA used the spreadsheet to prepare a takedown notice to Twitter (the "Takedown Notice"). Olumhense Tr., 154:2-11, 156:7-17; Chart to RIAA (Exhibit 3 at Olumhense Dep.); RIAA0000001-10.

Undisputed that a spreadsheet was used, but that document noted that Plaintiff's song was a "ripped" or exact copy of a Playboi Carti song, which is false. See RIAA 2.

15.   Olumhense had no knowledge of any agreements between Plaintiff and Jenks. Olumhense Tr., 156:13-17; ECF Doc. No. 62 [Olumhense Decl.], at ¶ 5.

Undisputed as to Olumhense as an individual but disputed as to UMG as a company. See Carter Recording Agreement, Jenks - Carter Recording Agreement.

16.   It was Olumhense's sole decision to include the two Twitter posts on the spreadsheet. Olumhense Tr., 156:7-17; ECF Doc. No. 62 [Olumhense Decl.], at ¶ 3.

Disputed. Olumhense testified that he did not recall these searches and that they did not fit within his standard practice of using keyword to locate the artist and song names as used on the platform. Olumhense Tr., 53:25-54:15 (he would search by "artist name" and "song title," neither of which would have led to the discovery of Plaintiff's song, which included neither the name Playboi Carti or the title of any Playboi Carti songs.). Furthermore,

Olumhense testified that UMG directed him to remove *only* copies of Playboi Carti songs and not remixes or similar beats. Olumhense Tr. 92:6-24, Ex. 1.

Olumhense denied ever hearing Plaintiff's song "Oi!" or any of Plaintiff's songs and thus could not have heard Oi! and included it in the spreadsheet for the takedown notices. Olumhense Tr., 96:10-17. And he denied very sending a takedown notice for the song "Oi!" or any of Plaintiff's songs. Id., 99:9-18.

Olumhense testified that UMG had no "formal policy or formal procedure" for sending takedown notices and that "40 plus people" and "everybody" at UMG "would have access" to the editable spreadsheet of takedown notices that eventually came to include relevant Twitter posts for Plaintiff's song, and all of those people were able to add and remove Twitter posts and songs

8

and those edits would not be visible to Olumhense. Olumhense Tr., 53:7017; 60:10-61:6; 67:17-21.

Olumhense testified that the spreadsheet with the takedown notices did not appear as he remembered it and that it "look[ed] like something that could have been altered, to be honest." Olumhense Tr. 109:7-21. He testified that it "look[ed] different than the way [he] remember[ed] sending it." Olumhense Tr. 110:4-9.

Finally, the takedown notice states that Plaintiff's song on Twitter was a "ripped track" which means an exact copy of a UMG track but it is undisputed that Plaintiff's song Oi! was a music video of Plaintiff and was a different song with different lyrics. See RIAA 2.; "Oi!" YouTube Video.

17. No one other than Olumhense was involved with Olumhense's decision to include the Twitter Posts on the spreadsheet. Olumhense Tr., 156:7-157:2; ECF Doc. No. 62 [Olumhense Decl.], at ¶ 3.

Disputed. Olumhense testified that UMG directed him to remove *only* copies of Playboi Carti songs and not remixes or similar beats. Olumhense Tr. 92:6-24, Ex. 1.

Olumhense denied ever hearing Plaintiff's song "Oi!" or any of Plaintiff's songs and thus could not have heard Oi! and included it in the spreadsheet for the takedown notices. Olumhense Tr., 96:10-17. And he denied very sending a takedown notice for the song "Oi!" or any of Plaintiff's songs. Id., 99:9-18.

Olumhense testified that the spreadsheet with the takedown notices did not appear as he remembered it and that it "look[ed] like something that could have been altered, to be honest." Olumhense Tr. 109:7-21. He testified that it "look[ed] different than the way [he] remember[ed] sending it." Olumhense Tr. 110:4-9.

9

Finally, the takedown notice states that Plaintiff's song on Twitter was a "ripped track" which means an exact copy of a UMG track but it is undisputed that Plaintiff's song Oi! is a different song with different lyrics. See RIAA 2.

### C. Carter's Complete Lack of Involvement with the Takedown Notice

18. Olumhense never communicated with or met Carter or Jenks. Olumhense Tr. 148:16-20; ECF Doc. No. 62 [Olumhense Decl.], at ¶¶ 6-7; ECF Doc. No. 132-2 [Carter Decl.] at ¶ 4.

Undisputed.

19. Carter did not tell UMG about the song "Oi!". Carter Tr., 86:13-15.

Disputed. Carter knew of the song "Oi!" approximately a year before his song was released, expressed his frustration to Jordan Jenks that he worked with Plaintiff to produce the Beat, and expressed his frustration about it. Bermudez Tr., at 98:13-99:18.

Carter made his first attempt to take down the song Oi! down from the online SoundCloud Platform of his label mate A$AP ILLZ ("ILLZ") in May of 2017, telling ILLZ that he should not be working with anyone else but Carter. See Jordan White Deposition; ECF Doc. No. 123, at ¶ 32-34.

Christopher Bermudez (White's Manager) further testified that on May 30, 2017, Bermudez communicated with Carter through Twitter direct message confronting him about Carter being upset with the fact that Jenks worked with White to create the Beat for "Oi!". And that Carter responded with LMAO, which is an acronym for "laughing my ass off." Bermudez Tr., at 30:15-24.

Carter then demanded that Jenks give him the same music composition that he gave to White for the purpose of using it for his upcoming album. Bermudez Tr., at 54:7-15.

Bermudez found out that Carter intended to release the song "Right Now" which shared the Beat for "Oi!" which was produced by Jenks. See Bermudez Tr., at 104:2-18 In April of 2018, Bermudez reached out to Carter's agent (Erin Larsen), and told Larsen that Carter was trying to obstruct Plaintiff by release Right Now based on the same beat of Plaintiff's song, and that Plaintiff's song was released first. Id.

Bermudez also shared the SoundCloud post of "Oi!" and the Fader article with Larsen. Erin Larsen reached out to "UMG A&R" Aaron Sherrod and communicated Bermudez's concerns and shared the SoundCloud post and Fader article of "Oi!" with Sherrod. Bermudez further testified that he spoke to Sherrod who said the matter would be would be handled. UMG took the song "Oi!" down a month later, which was a day after "Right Now" was released. Igbokwe Decl. ¶4, Ex. 2, at Dkt. Nos. 149, 149-2. Bermudez Tr., at 104:2-18; Text messages, EL1 – EL9.

The combination of the working and personal relationship that White's manager had with Carter's manager and his understanding of her responsibilities for Carter dictate that Carter informed UMG of the song "Oi!". Id., at 67:15-25, 97:11-98:2, 101:10-102:2.

20. Carter did not communicate with UMG about the Takedown Notice. Carter Tr., 88:17-19.

Disputed. Carter knew of the song "Oi!" approximately a year before his song was released, expressed his frustration to Jordan Jenks that he worked with Plaintiff to produce the Beat, and expressed his frustration about it. Bermudez Tr., at 98:13-99:18.

Carter made his first attempt to take down the song Oi! down from the online SoundCloud Platform of his label mate A$AP ILLZ ("ILLZ") in May of 2017, telling ILLZ that he should not be working with anyone else but Carter. See Jordan White Deposition; ECF Doc. No. 123, at ¶ 32-34.

11

Christopher Bermudez (White's Manager) further testified that on May 30, 2017, Bermudez communicated with Carter through Twitter direct message confronting him about Carter being upset with the fact that Jenks worked with White to create the Beat for "Oi!". And that Carter responded with LMAO, which is an acronym for "laughing my ass off." Bermudez Tr., at 30:15-24.

Carter then demanded that Jenks give him the same music composition that he gave to White for the purpose of using it for his upcoming album. Bermudez Tr., at 54:7-15.

Bermudez found out that Carter intended to release the song "Right Now" which shared the Beat for "Oi!" which was produced by Jenks. See Bermudez Tr., at 104:2-18 In April of 2018, Bermudez reached out to Carter's agent (Erin Larsen), and told Larsen that Carter was trying to obstruct Plaintiff by release Right Now based on the same beat of Plaintiff's song, and that Plaintiff's song was released first. Id.

Bermudez also shared the SoundCloud post of "Oi!" and the Fader article with Larsen. Erin Larsen reached out to "UMG A&R" Aaron Sherrod and communicated Bermudez's concerns and shared the SoundCloud post and Fader article of "Oi!" with Sherrod. Bermudez further testified that he spoke to Sherrod who said the matter would be would be handled. UMG took the song "Oi!" down a month later, which was a day after "Right Now" was released. Igbokwe Decl. ¶4, Ex. 2, at Dkt. Nos. 149, 149-2. Bermudez Tr., at 104:2-18; Text messages, EL1 – EL9.

The combination of the working and personal relationship that White's manager had with Carter's manager and his understanding of her responsibilities for Carter dictate that Carter informed UMG of the song "Oi!". Id., at 67:15-25, 97:11-98:2, 101:10-102:2.

21.     Carter did not send a takedown notice for "Oi!". Carter Tr., 86:9-10

12

Disputed. Carter knew of the song "Oi!" approximately a year before his song was released, expressed his frustration to Jordan Jenks that he worked with Plaintiff to produce the Beat, and expressed his frustration about it. Bermudez Tr., at 98:13-99:18.

Carter made his first attempt to take down the song Oi! down from the online SoundCloud Platform of his label mate A$AP ILLZ ("ILLZ") in May of 2017, telling ILLZ that he should not be working with anyone else but Carter. See Jordan White Deposition; ECF Doc. No. 123, at ¶ 32-34.

Christopher Bermudez (White's Manager) further testified that on May 30, 2017, Bermudez communicated with Carter through Twitter direct message confronting him about Carter being upset with the fact that Jenks worked with White to create the Beat for "Oi!". And that Carter responded with LMAO, which is an acronym for "laughing my ass off." Bermudez Tr., at 30:15-24.

Carter then demanded that Jenks give him the same music composition that he gave to White for the purpose of using it for his upcoming album. Bermudez Tr., at 54:7-15.

Bermudez found out that Carter intended to release the song "Right Now" which shared the Beat for "Oi!" which was produced by Jenks. See Bermudez Tr., at 104:2-18 In April of 2018, Bermudez reached out to Carter's agent (Erin Larsen), and told Larsen that Carter was trying to obstruct Plaintiff by release Right Now based on the same beat of Plaintiff's song, and that Plaintiff's song was released first. Id.

Bermudez also shared the SoundCloud post of "Oi!" and the Fader article with Larsen. Erin Larsen reached out to "UMG A&R" Aaron Sherrod and communicated Bermudez's concerns and shared the SoundCloud post and Fader article of "Oi!" with Sherrod. Bermudez further testified that he spoke to Sherrod who said the matter would be would be handled. UMG took the song

13

"Oi!" down a month later, which was a day after "Right Now" was released. Igbokwe Decl. ¶4, Ex. 2, at Dkt. Nos. 149, 149-2. Bermudez Tr., at 104:2-18; Text messages, EL1 – EL9.

The combination of the working and personal relationship that White's manager had with Carter's manager and his understanding of her responsibilities for Carter dictate that Carter informed UMG of the song "Oi!". Id., at 67:15-25, 97:11-98:2, 101:10-102:2.

22. Carter never met or communicated with Olumhense. ECF Doc. No. 132-2 [Carter Decl.] at ¶ 4.

Disputed. Carter's agent, after communicating with White's manager, and with UMG A&R Aaron Sherrod, was aware of the dispute with Plaintiff and Carter, issue with Oi! and indicated that the issue would be handled, which it was, through UMG a month before the song "Oi!" was taken down. Igbokwe Decl. ¶4, Ex. 2, at Dkt. Nos. 149, 149-2; Bermudez Tr., at 104:2-18; Text messages, EL1 – EL9.Carter knew of the song "Oi!" approximately a year before his song was released and expressed his frustration about it. Bermudez Tr., at 98:13-99:18. That frustration manifested to Carter demanding that Jenks give him the same music composition that he gave to White for the purpose of using it for his upcoming album. Id., at 54:7-15. The combination of the working and personal relationship that White's manager had with Carter's manager and his understanding of her responsibilities for Carter dictate that Carter informed UMG of the song "Oi!". Id., at 67:15-25, 97:11-98:2, 101:10-102:2..

23. Carter had no involvement with the Takedown Notice. ECF Doc. No. 132-2 [Carter Decl.], at ¶ 3; Carter Dep., 85:24-90:21.

Disputed. Carter knew of the song "Oi!" approximately a year before his song was released, expressed his frustration to Jordan Jenks that he worked with Plaintiff to produce the Beat, and expressed his frustration about it. Bermudez Tr., at 98:13-99:18.

14

Carter made his first attempt to take down the song Oi! down from the online SoundCloud Platform of his label mate A$AP ILLZ ("ILLZ") in May of 2017, telling ILLZ that he should not be working with anyone else but Carter. See Jordan White Deposition; ECF Doc. No. 123, at ¶ 32-34.

Christopher Bermudez (White's Manager) further testified that on May 30, 2017, Bermudez communicated with Carter through Twitter direct message confronting him about Carter being upset with the fact that Jenks worked with White to create the Beat for "Oi!". And that Carter responded with LMAO, which is an acronym for "laughing my ass off." Bermudez Tr., at 30:15-24.

Carter then demanded that Jenks give him the same music composition that he gave to White for the purpose of using it for his upcoming album. Bermudez Tr., at 54:7-15.

Bermudez found out that Carter intended to release the song "Right Now" which shared the Beat for "Oi!" which was produced by Jenks. See Bermudez Tr., at 104:2-18 In April of 2018, Bermudez reached out to Carter's agent (Erin Larsen), and told Larsen that Carter was trying to obstruct Plaintiff by release Right Now based on the same beat of Plaintiff's song, and that Plaintiff's song was released first. Id.

Bermudez also shared the SoundCloud post of "Oi!" and the Fader article with Larsen. Erin Larsen reached out to "UMG A&R" Aaron Sherrod and communicated Bermudez's concerns and shared the SoundCloud post and Fader article of "Oi!" with Sherrod. Bermudez further testified that he spoke to Sherrod who said the matter would be would be handled. UMG took the song "Oi!" down a month later, which was a day after "Right Now" was released. Igbokwe Decl. ¶4, Ex. 2, at Dkt. Nos. 149, 149-2. Bermudez Tr., at 104:2-18; Text messages, EL1 – EL9.

15

The combination of the working and personal relationship that White's manager had with Carter's manager and his understanding of her responsibilities for Carter dictate that Carter informed UMG of the song "Oi!". Id., at 67:15-25, 97:11-98:2, 101:10-102:2.

## II. Undisputed Facts Which Defeat Plaintiff's Claim for Declaratory Judgment By Demonstrating There Is Not Case Or Controversy Over Plaintiff's Rights in "Oi!"

24. Defendants do not presently contend that White has infringed the rights of Defendants in and through his distribution and exploitation of "Oi!". ECF Doc. No. 56 at p. 1, n.2; ECF Doc. No. 61 at p. 7, n.c.

Undisputed.

25. Defendants do not presently dispute that Defendant has the right to display, distribute, and perform "Oi!" ECF Doc. No. 56 at p. 1, n.2; ECF Doc. No. 61 at p. 7, n.c.

Undisputed.

Dated: February 24, 2023  
New York, New York

Respectfully submitted by,

/s/ William Igbokwe  
William Igbokwe, Esq.  
Igbokwe, PLLC d/b/a  
Law Office of William Igbokwe  
28 Liberty Street, 6th Floor  
New York, New York 10005  
(646) 205-3241

Scott Alan Burroughs, Esq.  
DONIGER / BURROUGHS  
247 Water Street, First Floor  
New York, New York 10038  
(310) 590-1820

Carlos M. Santiago, Esq.  
The Law Office of Carlos Santiago, P.C.  
11 Broadway, Suite 615  
New York, NY 10004  
(212) 246-8456

*Attorneys for Plaintiff / Counterdefendant*