```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  08/27/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JORDAN WHITE,

                Plaintiff,

-against-

UMG RECORDINGS, INC. (d/b/a INTERSCOPE RECORDS) and JORDAN CARTER, p/k/a (PLAYBOI CARTI),

                Defendants.

20 Civ. 9971 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Jordan White, brings this action against Defendants, UMG Recordings, Inc. ("UMG") and Jordan Carter, alleging that Defendants violated § 512(f) of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), by knowingly submitting an improper "takedown notice" to service providers that hosted content related to Plaintiff's music. *See* Second Am. Compl. ("SAC"), ECF No. 123. By order dated December 21, 2021, the Court granted UMG and Carter's motion to dismiss the claims against them. ECF No. 71. White then moved for leave to file a second amended complaint, and the Court granted the motion, finding that the proposed complaint stated claims under § 512(f) against UMG and Carter. Order at 7–9, ECF No. 117.

    Defendants now move for summary judgment under Federal Rule of Civil Procedure 56. ECF No. 176; *see* Def. Mem., ECF No. 177. For the following reasons, Defendants' motion is GRANTED.[1]

---

[1] Also pending are Plaintiff's motion to file a supplemental letter related to the summary judgment motion, ECF No. 198, and Defendants' motion for oral argument on the motion, ECF No. 203. Plaintiff's motion is GRANTED, and the Court has considered Plaintiff's supplemental letter—which consists of links to the "Oi!" and "Right Now" music videos—in coming to its decision. The motion for oral argument is DENIED.

## BACKGROUND[2]

I.  Factual Background

Plaintiff White is a rap artist who performs under the names G-Baby and GVVAAN. Pl. Opp. at 2, ECF No. 186. In 2017, White paid $250 to producer Jordan Jenks for a non-exclusive license to use an instrumental music track (the "Beat") that Jenks had created. Def. 56.1 ¶ 1, ECF No. 180. White incorporated the Beat into a sound recording called "Oi!" and posted links to the "Oi!" music video on multiple online platforms, including Twitter (now X). Id. ¶¶ 2–4, 9.

In May 2018, Defendant Carter—a rap artist who performs under the name Playboi Carti—performed vocals on the sound recording "Right Now," which also incorporates the Beat. Def. Mem. at 1; Def. 56.1 ¶¶ 5–7. Defendant UMG, a record label, is the sole copyright owner of the "Right Now" sound recording. Def. 56.1 ¶ 8.

According to Defendants, Osaze Olumhense, then a content protection specialist at UMG, encountered two posts of "Oi!" on Twitter while searching for posts that infringed UMG's copyrights. Id. ¶ 10; see Olumhense Dep. at 31:1–15, 169:4–171:22, ECF Nos. 179-1, -2. Olumhense "did an A/B comparison" between "Oi!" and "Right Now" and determined that the songs both used the Beat. Olumhense Dep. at 155:10–156:6; Def. 56.1 ¶ 12. Concluding (incorrectly) that "Oi!" infringed UMG's copyright in "Right Now," Olumhense recorded the two tweets on a spreadsheet to be sent to the Recording Industry Association of America (the "RIAA"). Def. 56.1 ¶¶ 12–13; see id. ¶¶ 24–25 (conceding that the takedown notices were

---

[2] The facts in this section are taken from the parties' Rule 56.1 statements, responses, and declarations, unless otherwise noted. Disputed facts are so noted. Citations to a paragraph in a Rule 56.1 statement also include the opposing party's response. "[W]here there are no citations[,] or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (alteration omitted). On a motion for summary judgment, the facts must be read in the light most favorable to the nonmoving party. *Id.* at 69.

erroneous). The RIAA in turn requested that Twitter take down the two posts pursuant to the DMCA, and Twitter complied. *Id.* ¶ 14; *see* ECF No. 189-4.

White concedes that Olumhense had no knowledge of his non-exclusive license to use the Beat. Def. 56.1 ¶ 15. He alleges, however, that Carter was aware of—and unhappy with—the license. Pl. Opp. at 3. White testified that, after White published "Oi!" on non-party Illijah Ulanga's SoundCloud page, Carter told an acquaintance that White was "burning the producer [Jenks] out by working with him" and "swore . . . that if [Ulanga] didn't do something about it, that he was going to take things into his own hands." White Dep. at 88:2–15, ECF No. 179-4. White also testified that in spring 2018 he was contacted by Aaron Sherrod, a UMG employee "speaking on behalf of [Carter] and Jenks," who told him that "Right Now" would be included on Carter's upcoming album and "indicated that he wanted to make . . . things right." *Id.* at 83:25–85:19; *see* Pl. Opp. at 3. "[S]eeking to . . . gain ownership of the [B]eat," White's manager, Christopher Bermudez, also spoke to Sherrod and informed him that White had recorded a song to the Beat a year prior to Carter's. Bermudez Dep. at 50:17–51:6, ECF No. 179-5. White contends that Carter at some point "contacted his team, including his label, [UMG], and enlisted them to stifle his competition by scrubbing the *Oi!* music video from Twitter." Pl. Opp. at 1.

II.   Procedural Background

White filed the instant action against UMG, Carter, Jenks, and ten Does on November 25, 2020, and amended his complaint on March 17, 2021. ECF Nos. 1, 30. The amended complaint alleged that Defendants, "[i]n serving their Section 512 notices, . . . with knowledge of the falsity, materially misrepresented that the public performance, display or distribution of Oi! infringed their rights under the Copyright Act." ECF No. 30 ¶ 31. Defendants moved to

3

dismiss. ECF No. 40. On December 21, 2021, the Court granted the motion to dismiss with respect to White's claims against UMG and Carter, and denied the motion with respect to White's claims against Jenks. ECF No. 71 at 8. White then moved for leave to file a second amended complaint. ECF No. 80.

Assessing whether White's proposed amendment would be futile, the Court found that the proposed second amended complaint stated claims under the DMCA against UMG and Carter, but not against Jenks. Order at 10. The Court first explained that "[t]o state a claim under the DMCA, Plaintiff need only plead . . . (1) [that a defendant] knowingly misrepresented to Twitter that Plaintiff was posting content in violation of the defendant's purported copyrights to that content; (2) that, relying on that defendant's willful misrepresentation, Twitter removed or disabled access to the posts in question; and (3) that, as a result of the aforementioned series of events, Plaintiff has incurred damages." *Id.* at 6. Examining the complaint's allegations against UMG, the Court noted that "many of [White's] allegations and arguments go towards establishing UMG's negligence, which is insufficient for a claim under § 512(f)." *Id.* (citations omitted). However, the Court found that the proposed complaint did include one allegation supporting UMG's actual knowledge: that UMG, "in comparing ['Oi!'] with the songs it owned[,] *knew* there was no infringement." *Id.* (emphasis in original) (quoting SAC ¶ 55). The Court further found that the complaint adequately alleged the other elements of a § 512(f) claim and, therefore, stated a claim against UMG. *Id.* at 7.

Turning to Carter, the Court rejected White's argument that the complaint pleaded the existence of "an agency relationship between Carter and UMG with respect to the takedown notices." *Id.* The Court found, however, that White "sufficiently pleaded that Carter conspired with UMG to send the takedown notices" by alleging that the two shared a common goal and

4

that UMG's search protocols would not have uncovered "Oi!" *Id.* at 8–9.  The Court also found that the complaint alleged that Carter knew "Oi!" did not infringe on "Right Now." *Id.* at 8. Accordingly, the Court allowed White to file his second amended complaint and proceed against UMG and Carter.[3]

UMG and Carter now move for summary judgment.  ECF No. 176.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a genuine dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If the nonmoving party has the ultimate burden of proof at trial, the movant may also satisfy its own summary judgment burden by demonstrating that the nonmovant cannot produce admissible evidence that supports the existence of a dispute of material fact.  *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.

---

[3] The Court dismissed the claims against Jenks *sua sponte* after determining that the proposed second amended complaint did not "sufficiently allege that Jenks was involved in sending the takedown notice either directly or as a member of a conspiracy."  Order at 9–10; *see also* ECF No. 124.

5

In order to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party "must present concrete particulars and cannot succeed with purely conclusory allegations." *Marathon Enterps., Inc. v. Schröter GMBH & Co. KG*, No. 01 Civ. 595, 2003 WL 355238, at *4 (S.D.N.Y. Feb. 18, 2003) (quotation marks and citation omitted).  "There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor."  *Id.*  "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* (quoting *Anderson*, 477 U.S. at 249–50).  In deciding the motion, the Court views the record in the light most favorable to the nonmoving party.  *Koch*, 287 F.3d at 165.

## DISCUSSION

Under the DMCA, copyright holders can notify online service providers like X (formerly Twitter) when their sites are hosting or providing access to infringing content.  *See* 17 U.S.C. § 512(c). These "takedown notices" must include, inter alia, "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." *Id.* § 512(c)(3)(A)(v).  The DMCA also provides that

> Any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing[.]

*Id.* § 512(f).

Because the DMCA requires only a "good faith belief" that material is infringing, "a copyright holder is not liable for misrepresentation under the DMCA if they subjectively believe

6

the identified material infringes their copyright, even if that belief is ultimately mistaken." *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017). Rather, "a defendant must have *actual knowledge* that it is making a misrepresentation of fact." *Cabell v. Zimmerman*, No. 09 Civ. 10134, 2010 WL 996007, at *4 (S.D.N.Y. Mar. 12, 2010).

   I.   UMG

First, Defendants argue that the sole allegation supporting UMG's liability—that UMG, "in comparing ['Oi!'] with the songs it owned[,] *knew* there was no infringement"—"is demonstrably false based upon the undisputed factual record." Def. Mem. at 6 (quoting Order at 6). The Court agrees.

As White concedes, Olumhense—the UMG employee responsible for the "Oi!" takedown notices—"had no knowledge of any agreements" between White and Jenks to use the Beat. Def. 56.1 ¶ 15. This admission alone dooms White's claim against UMG. Although White argues that Carter, Carter's manager, Sherrod, and Jenks all had knowledge of White's license to use the Beat, Pl. Opp. at 11, there is no evidence in the record that this fact was ever communicated to Olumhense. White contends that the knowledge of UMG's employees (presumably, Sherrod) should be imputed to UMG. *Id.* at 13. But, White cites no caselaw for the proposition that one employee's knowledge that a use may be non-infringing should be imputed to another employee who independently issues a takedown notice on behalf of the company. *Cf.* Olumhense Decl. ¶ 3, ECF No. 179-7 (stating that Olumhense "was the sole UMG employee involved with the decision" to send the takedown notices). White further contends that UMG failed to exercise "reasonable care or diligence" in managing the employees who issued the takedown notices, *id.*—but this argument sounds in negligence, a theory of liability insufficient under the DMCA and already rejected by this Court. *Cabell*, 2010 WL 996007, at

*4 (rejecting argument that defendant was liable under § 512(f) for failing to perform "the proper due diligence to back up its claim that Plaintiff was a copyright infringer" before sending a takedown notice); *see also* ECF No. 70 at 4.

White suggests that Olumhense's deposition testimony and sworn declaration are untruthful because "Defendants' ordinary search protocols would never have identified the ["Oi!" video] as infringing content." Pl. Opp. at 15. But, Olumhense explained how standard keyword searches could have led to the "Oi!" video Tweets even if they did not mention Playboy Carti or "Right Now" by name. He testified that after a user has searched for a "song keyword and artist name, . . . [t]he Twitter algorithm will also suggest songs and Tweets, based on what you are searching for, to keep you on platform." Olumhense Dep. at 168:11–169:24. White offers no evidence beyond mere speculation to counter this explanation.

Several of White's other purported disputes of fact are irrelevant to the issue of Olumhense's (and thereby UMG's) actual knowledge: namely, that "UMG violated its own internal guidelines when demanding that Twitter remove White's song" and that "UMG and Carter falsely claimed ownership of not only the Beat of White's song, but ownership of his lyrics and musical performance as well." Pl. Opp. at 13–14. Defendants do not contest that the takedown notices were erroneous. *See* Def. 56.1 ¶¶ 24–25. The issue is whether Olumhense was so aware at the time, and White has presented no evidence that he was.

Finally, White states that "Olumhense testified that the takedown records were altered and that he does not recall finding" the "Oi!" Tweets. Pl. Opp. at 14. This mischaracterizes Olumhense's testimony. As Defendants explain, "Olumhense stated at his deposition that the spreadsheet of takedown notices which was produced in discovery looked different to him because it had been converted from its native Excel format to PDF format"; when the record was

later produced in its native format, his memory was refreshed.  Def. Reply at 8–9, ECF No. 202; Olumhense Dep. at 152:15–155:2.  Nor is it surprising that Olumhense, at his deposition, did not immediately recall adding the "Oi!" Tweets to the spreadsheet more than three years earlier.  Upon hearing a recording of "Oi!," Olumhense's memory was refreshed as to the name of the song and artist.[4]  *Id.* at 151:6–152:7.

In all, the factual record contradicts White's central claim that UMG, in issuing the takedown notices, knew that "Oi!" did not infringe its copyrights.  White's arguments to the contrary rest on speculative allegations.  Summary judgment is, therefore, GRANTED to UMG on the DMCA claim.

II.   Carter

Second, Defendants argue that the undisputed factual record disproves White's allegation that Carter conspired with UMG to send the misleading takedown notices.  Def. Mem. at 7.  Having granted summary judgment to UMG on White's DMCA claim, it follows that Carter is likewise entitled to summary judgment.  Although Carter may well have been aware of (and displeased with) White's license to use the Beat, White has failed to establish that Carter had any part in the takedown notices.  To the contrary, it is undisputed that "Olumhense never communicated with or met Carter."  Def. 56.1 ¶ 18.  Carter testified and swore under penalty of perjury that he was entirely uninvolved with the takedown notices.[5]  Carter Dep. at 85:24–90:21,

---

[4] The Court declines to draw any adverse inference from the fact that Olumhense's re-direct examination occurred on a date later than his cross-examination.  *See* Pl. Opp. at 26.  Contrary to White's representations, the transcript indicates that defense counsel was willing to continue the first deposition session, but Plaintiff's counsel opted to adjourn for the day.  Olumhense Dep. at 140:8-141:22.

[5] White encourages the Court to exclude Carter's deposition testimony, contending that he "failed to light the room from which he was testifying and refused to answer questions in good faith."  Pl. Opp. at 26–28.  Judge Wang already rejected this argument in denying White's motion to compel Carter to appear for a second deposition, finding that "the portions of Carter's transcript submitted by Defendants contradict Plaintiff's assertions."  ECF No. 171; *see* ECF No. 167.  White did not submit objections to Judge Wang's order, and the Court declines to revisit the issue here.

ECF No. 179-3; Carter Decl. ¶¶ 3–4, ECF No. 179-6. Although the Court is required to draw all inferences in favor of the nonmoving party, White has adduced no non-speculative evidence connecting Carter with the takedown notices. Accordingly, the Court GRANTS summary judgment to Carter on the DMCA claim.

### III. Declaratory Judgment

Last, Defendants ask the Court to dismiss White's request for a declaratory judgment stating "that White has not infringed the rights of Defendants in and through his distribution and exploitation of Oi! and has the right to display, distribute, and perform Oi!" SAC ¶ 79. Defendants "do not presently contend that White has infringed the rights of Defendants in and through his distribution and exploitation of 'Oi!'" Def. 56.1 ¶ 24. Nor do they "presently dispute that [White] has the right to display, distribute, and perform 'Oi!'" Id. ¶ 25.

A declaratory judgment is intended to "clarify and settle disputed legal relationships and to relieve uncertainty, insecurity and controversy." *Broadview Chem. Corp. v. Loctite Corp.*, 474 F.2d 1391, 1393 (2d Cir. 1973). "There is no basis for declaratory relief where only past acts are involved." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Grp., Inc.*, No. 02 Civ. 10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003). Because the parties agree that White has not infringed Defendants' rights and, indeed, has the right to display, distribute, and perform "Oi!," any declaratory judgment would concern only past acts. The Court, therefore, declines to exercise its discretion to grant declaratory relief, and White's claim for declaratory relief is DISMISSED.

**CONCLUSION**

Defendants' motion for summary judgment on White's first claim (liability under 17 U.S.C. § 512(f)) is GRANTED. White's second claim (declaratory judgment) is DISMISSED without prejudice.

The Clerk of Court is directed to enter judgment consistent with this order; terminate the motions at ECF Nos. 176, 198, 203, 209, and 210; and close the case. Judge Wang will decide Defendants' motions for sanctions by separate order. *See* ECF Nos. 212, 225.

SO ORDERED.

Dated: August 27, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge